**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:21-CV-00080-BJB**

| | |
|---|---|
| **LINDA MCCLAIN** | **PLAINTIFF** |
| **VS.** | |
| **MARK WYSONG** | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Disqualify Plaintiff's Counsel. (DN 7). Plaintiff has filed a Response that includes a Counter-Motion to Disqualify Defendant's Counsel. (DN 9). Defendant has filed a Reply. (DN 13). This motion has been referred to the undersigned United States Magistrate Judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A).[1]

I. Background

This case involves a dispute between two former business partners and friends whose professional and personal relationships have soured. Plaintiff Linda McClain ("McClain") and Defendant Mark Wysong ("Wysong") have owned and operated several businesses together, including Aerete Integrative Medicine ("Aerete"), a healthcare business. (*See* DN 1-1, at ¶ 6; DN 6, at p. 7, ¶ 6). Aerete was originally incorporated in South Carolina in 2015 (DN 7-2), and later reorganized under Kentucky law in 2020 (DN 13-3).

McClain brings this fraud action against Wysong based on the following facts. In 2018, McClain provided funds to Wysong for the joint purchase of residential property lots in South

---

[1] District Courts within this Circuit hold that motions to disqualify are non-dispositive motions. *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832 (M.D. Tenn. 2018); *Harper v. Everson*, No. 3:15-CV-00575-JHM, 2016 WL 9149652, at *2 (W.D. Ky. May 5, 2016); *Perkins v. Rieser*, No. 3:07-CV-325, 2012 WL 1606657, at *1 (S.D. Ohio May 8, 2012); *DeBiasi v. Charter Cty. of Wayne*, 284 F. Supp. 2d 760, 768 (E.D. Mich. 2003).

Carolina, believing she and Wysong would be partners in these business ventures and split the profits. (DN 1-1, at ¶¶ 19-23). Allegedly McClain later discovered she was not a joint owner in any of these entities and that Wysong used the funds she provided for his own benefit. (*Id.* at ¶ 23). Despite not being an owner, McClain is a guarantor on Wysong's personal business debts from the purchase of these properties. (DN 6, at ¶¶ 27, 30). Wysong, according to McClain, refuses to repay the funds or remove her as guarantor on his debts. (*Id.* at ¶¶ 30-33).

In 2019 and 2020, Aerete paid Wysong a salary. (DN 1-1, at ¶ 9, 13). Wysong had access to Aerete's bank accounts so that he could help manage the business. (*Id.* at ¶ 8). McClain alleges that in addition to his salary, Wysong began pilfering funds from Aerete accounts for his personal non-business expenses and for other businesses he solely owned. (*Id.* at ¶¶ 10, 13, 16). McClain seeks repayment of all funds she provided to Wysong and all funds he took from Aerete without her consent, along with unjust enrichment and conversion damages. (*Id.* at ¶¶ 34-53).

Wysong asserts counterclaims of unjust enrichment, promissory estoppel, and for an accounting against McClain. These counterclaims relate to an agreement between himself and McClain in late 2020, where Wysong allegedly transferred his 100% interest in Aerete to McClain, in exchange for McClain releasing her interests in the parties' other joint ventures. (DN 6, at pp. 7-12, ¶¶ 10-11, 13-24). Wysong alleges that after he and McClain completed the transfer agreement, McClain admitted that she was planning to violate the agreement to Wysong's detriment by altering Aerete's books and records. (*Id.* at ¶¶ 10, 13-16).

Wysong currently seeks that McClain's counsel in this case, Anna S. Whites ("Ms. Whites"), be disqualified from representing McClain based on Ms. Whites' prior representation of Wysong and Aerete. (DN 7). Wysong and McClain present very different accounts of Wysong's role at Aerete and Ms. Whites' prior involvement as legal counsel for the parties and for Aerete.

According to Wysong, he hired Ms. Whites to serve as counsel to Aerete in late 2019. (DN 7, at p. 2). As the managing member and CEO of Aerete, Wysong explains he directed Ms. Whites' work as legal counsel, shared confidential information with her to seek legal advice, and undertook actions on Aerete's behalf based on Ms. Whites' legal advice. (*Id.* at pp. 2-3). Ms. Whites allegedly assisted Wysong in drafting documents related to McClain's employment with Aerete (DN 7-3), loan documents (DN 7-4), and transactional agreements between McClain and Wysong effecting ownership transfers of Aerete (DN 7-6) and, another joint venture, Stonewall Coin Laundry (DN 7-5).

In addition to representing Aerete, Wysong states that Ms. Whites served as his personal legal counsel and as counsel to his other business interests. (DN 7, at p. 4). Through this attorney-client relationship, Ms. Whites allegedly had possession of confidential information of Wysong's, including his personal finances and assets and operations of his business ventures that are relevant to the claims and counterclaims in this case. (*Id.*). Wysong explains that in late 2020, Ms. Whites "jumped over" to McClain's side to make allegations of wrongdoing against him, which spring directly from agreements and transactions that Ms. Whites helped orchestrate as counsel for Aerete. (*Id.* at p. 5).

McClain presents a different version of Ms. Whites' involvement at Aerete. McClain states that Aerete's Board of Directors, comprised of her and Wysong, initially hired Ms. Whites to work on a reimbursement issue on Aerete's behalf. (DN 9, at p. 7). It wasn't until April of 2020 that McClain and "other members of the Aerete Board" hired Ms. Whites as permanent counsel and executed a contract to that effect. (*Id.*). McClain recalls that as Aerete's attorney, Ms. Whites worked directly under her supervision. (DN 9, at pp. 1-2). Both McClain individually, and Aerete when financially able, allegedly paid Ms. Whites' legal fees from April of 2020 to the present.

(*Id.*). McClain proffers that Ms. Whites served as her attorney individually and on non-Aerete matters over the past year but that Ms. Whites never had an attorney-client relationship or contract with Wysong. (DN 9). McClain further contends that Wysong never served as CEO of Aerete and was never the sole owner of the company. (*Id.* at pp. 4-5).

## II. Analysis

### A. Wysong's Motion to Disqualify Ms. Whites

Wysong argues disqualification of Ms. Whites is necessary under both Kentucky Rule of Professional Conduct 1.9(a) (Duties to Former Clients) and 3.7 (Lawyer as Witness). Wysong, as the party moving for disqualification, bears the initial burden on his motion. *See Kirsch v. Dean*, No. 3:16-CV-00299-CRS, 2016 WL 7177765, at *2 (W.D. Ky. Dec. 7, 2016). The moving party's burden is heavy and requires a high standard of proof because "[m]otions to disqualify are viewed with disfavor." *Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp.,* 237 B.R. 322, 337 (6th Cir. BAP 1999), *aff'd* 5 Fed.App'x 396 (6th Cir.2001) (citation and internal quotation marks omitted). Disqualification of a party's choice of counsel is deemed "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Id.* An evidentiary hearing on a motion to disqualify counsel is not required so long as the factual inquiry conducted allows for appellate review.[2] *Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 710 (6th Cir. 1982).

### i. Conflict of Interest

Federal law governs whether an attorney practicing before the federal courts has violated the Standards of Professional Conduct, as adopted in the Kentucky Rules of Professional Conduct. *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 6877573, at *2 (W.D. Ky. Nov. 23, 2020) (citing *In re Snyder*, 472 U.S. 634, 645 n. 6 (1985)). This Court,

---

[2] Neither party has requested an evidentiary hearing on the issue; and the Court finds the briefs and their attachments are sufficient to adjudicate Wysong's Motion to Disqualify Ms. Whites.

accordingly, applies the Kentucky ethical rules when evaluating motions to disqualify counsel. *See Carlsen v. Thomas*, 159 F.R.D. 661, 663-64 (E.D. Ky. 1994); *see also Umphenour v. Mathias*, No. CIV.A. 07-427-KSF, 2008 WL 2785609, at *2 (E.D. Ky. July 16, 2008) ("[T]he attorneys of record in this action are subject to the Kentucky Rules of Professional Conduct and the judicial decisions interpreting those rules.").

Kentucky Rule of Professional Conduct 1.9(a) governs successive conflicts of interest. The Rule provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in . . . a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Ky. S. Ct. R. 3.130(1.9)(a). In the Sixth Circuit, disqualification of counsel is appropriate if: "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking confidential information." *Bowers v. Ophthalmology Group,* 733 F.3d 647, 651 (6th Cir.2013) (quoting *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990)). Rule 1.9(a) and the three-part test delineated in *Dana* are considered "essentially the same" and the effect of using them together is "minimal at best." *Id.*

Wysong argues that Ms. Whites has two successive conflicts warranting disqualification. First, he claims Ms. Whites' representation of Aerete during the relevant period extended to him as the CEO and sole member of Aerete. Second, he asserts Ms. Whites represented him individually and in connection with his business, Stonewall Development.[3]

---

[3] Wysong also seems to hint that McClain's admission that Ms. Whites' "working knowledge of Aerete's operations will be of great assistance in addressing the issues in this action" constitutes an appearance of impropriety requiring disqualification. (DN 9, at p. 11). Though the Court acknowledges the inherent appearance of impropriety in a situation like this where an attorney for an organization represents one officer/owner against a prior officer/owner, any such appearance is not a basis for disqualification. The Kentucky Rules of Professional Conduct (and the Model Rules) have removed the "appearance of impropriety" language. *See* Ky. S. Ct. R. 3130(1.), cmt. 5. And the Kentucky Supreme Court has unequivocally overturned a line of cases permitting disqualification based on

a. Did Ms. Whites' Representation of Aerete Extend to Wysong Individually?

The threshold question in the *Dana* analysis and Rule 1.9 is whether an attorney-client relationship existed. Attorney-client relationships are contractual in nature and may be either express or implied by the conduct of the parties. *J&B Energy, Inc. v. Caldwell,* No. 2012-CA-000370-MR, 2014 WL 3973966, at *9 (Ky. Ct. App. Aug. 15, 2014) (citing *Daugherty v. Runner*, 591 S.W.2d 12, 17 (Ky. Ct. App. 1978)). To prove an attorney-client relationship exists through implication, the client must demonstrate "a reasonable expectation or belief that the attorney agreed to the representation." *Id.* (citing *Lovell v. Winchester*, 941 S.W.2d 466 (Ky. 1997) (overruled on other grounds)).

The parties seem to agree that Ms. Whites expressly contracted to represent Aerete in 2020. But the scope of that representation and whether it extended to Wysong is disputed. Wysong argues that Ms. Whites' representation of Aerete extended to him as Aerete's CEO and sole member during the relevant period. He relies on Kentucky Rule of Evidence 503 to claim he is a "representative" of Aerete for all work Ms. Whites performed as counsel for the company. (DN 7, at pp. 7-8). He asserts that he hired Ms. Whites and acted at her direction and advice. (*Id.*). McClain responds that Ms. Whites' contract with Aerete was not created, negotiated, or executed by Wysong or at his request. (DN 9, at p. 11). McClain maintains that Ms. Whites did not represent individual members/owners/officers simply because she served as counsel to Aerete. (*Id.* at p. 12).

Generally, an attorney representing a corporation does not automatically represent the corporation's constituents in their individual capacities, even on the same matters. *Innes v. Howell Corp.*, 76 F.3d 702, 712 (6th Cir. 1996). Clear consent from the corporation is required. *Id.*; *see*

---

an appearance of impropriety. *Marcum v. Scorsone*, 457 S.W.3d 710, 717 (Ky. 2015) ("It is telling that the appearance-of-impropriety standard does not appear in those rules, except in commentary *condemning* its use and noting that it has been deleted from the rules.").

*also Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005). Kentucky Rule of Professional Conduct 1.13 encapsulates these principles. Paragraph (g) of Rule 1.13 provides that "a lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents" subject to the provisions of Rule 1.7. Ky. S. Ct. R. 3.130(1.13). Rule 1.7 allows for dual representation if certain requirements are met, including each affected client giving "informed consent, confirmed in writing." Ky. S. Ct. R. 3.130(1.7). When an organization's consent is required by Rule 1.7, an appropriate official of the organization, other than the individual who is seeking representation, shall give the consent.[4] Ky. S. Ct. R. 3.130(1.13).

Many circuits have adopted the Third Circuit's five-factor test from *Bevill, Bresler & Schulman Asset Mgmt. Corp.*, to assess whether a corporate officer or member has established an independent attorney-client relationship with corporate counsel. The *Bevill* test asks:

(1) Whether the employee approached counsel for the purpose of seeking legal advice;

(2) When he approached counsel, did he make it clear that he was seeking legal advice in his individual rather than representative capacity;

(3) Counsel saw fit to communicate with him in his individual capacity, knowing that a possible conflict could arise;

(4) His conversations with counsel were confidential; and

(5) The substance of the conversations with counsel did not concern matters within the company or the general affairs of the company.

---

[4] Wysong further cites to the Commentary to Rule 1.13(g), which states that:

> If the organization is closely held it is possible that the owners of the organization will have an expectation that the lawyer represents the organization and the organization's owners. In this situation, when the lawyer reasonably should know that the owners have an expectation of dual representation, the lawyer should advise the owners and the representatives of the organization, preferably in writing, the identify of the lawyer's client and the ramifications of a client conflict.

Ky. S. Ct. R. 3.130(1.13)(g), comm. 12. Comments to the Kentucky Rules of Professional Conduct are not substantive or binding but "are intended as guides to interpretation" of the relevant provisions. *Dixie Fuel Co., LLC v. Straight Creek, LLC*, No. 6:08-CV-326-GFVT, 2010 WL 11527352, at *2 (E.D. Ky. Mar. 25, 2010); *see also Lanham v. Com.*, 171 S.W.3d 14, 20 (Ky. 2005) (noting that commentary to Kentucky Rules of Evidence is not binding and does not have the force of law).

805 F.2d 120, 123 (3d Cir. 1986); *see also Ross*, 423 F.3d at 605 (recognizing the *Bevill test*, that requires an individual to show that he "made it clear" that he was seeking individual advice).

On balance, the *Bevill* factors weigh heavily against Wysong's claim of an attorney-client relationship with Ms. Whites through his role as a board member and owner of Aerete. The available evidence fails to indicate that either Aerete or Wysong consented to concurrent representation by Ms. Whites during the relevant time period or that there was an implied agreement for Ms. Whites to represent Wysong in his individual capacity.

Although Wysong repeatedly emphasizes that he engaged Ms. Whites to represent Aerete, he only provides the final page of a letter of intent apparently signed by both Wysong and Ms. Whites. By failing to include the entire agreement, Wysong cannot demonstrate that his solicitation of Wysong as counsel for Aerete extended to individual representation.[5] Nor does Wysong cite authority suggesting that a corporate officer or board member's hiring of outside counsel to perform work for a corporation creates an individual attorney-client relationship between that officer/director and the attorney.

Wysong also submits a declaration, attesting to Ms. Whites working "as counsel for Aerete and counsel to [him] as Aerete's CEO." (DN 7-1, at p. 2). The Declaration states that Ms. Whites served as Wysong's counsel in executing his full ownership interest in Aerete to McClain and was privy to Wysong's confidential information as part of her representation as to that transaction. (*Id.* at p. 3). While Wysong's Declaration indicates his belief that an attorney-client relationship

---

[5] Wysong also relies on KRE 503 to claim that he is unquestionably the "Representative of [Aerete]" for all work done by Whites as counsel to the LLC. KRE 503 governs the applicability of attorney-client privilege. Under this Rule, communications between a "representative of the client" and the client's lawyer are generally privileged. The attorney-client privilege, however, is not at issue in this motion. It is the broader ethical duty of confidentiality attorneys are bound to by the Kentucky Rules of Professional Conduct that controls here. *See, e.g., Pinnacle Sur. Servs., Inc. v. Loehnert*, 3:14-cv-425-JGH, 2015 WL 1136647, at *1 (W.D. Ky. Mar. 12, 2015) (noting that KRE 503(d)(5) was not at issue where Defendant sought reconsideration of the Court's order disqualifying counsel based on a conflict of interest).

8

existed, Wysong still must prove his belief was reasonable. *See Umphenour*, 2008 WL 2785609, at *5. The additional evidence Wysong submits does not support the reasonableness of his belief that Ms. Whites' representation of Aerete extended to him individually as a board member, officer, and owner.

Attached to Wysong's Motion is an email from Ms. Whites that includes a letter regarding McClain's employment at Aerete (DN 7-3) and an email from Ms. Whites sending loan documents she prepared on Aerete's behalf (DN 7-4). With his Reply, Wysong submits an email from Ms. Whites that included Wysong's draft letter of resignation from Aerete and a wholly redacted separation agreement, corporate resolution, and LLC membership transfer agreement. (DN 13-5). These documents tend to show Ms. Whites' involvement in drafting various agreements or documents for Aerete, but they do not constitute proof of Ms. Whites' dual representation. The submitted emails between Ms. Whites and Wysong do not concern matters beyond the general affairs of the company and do not show Wysong requesting legal advice in an individual capacity.

Wysong also attaches two stock and ownership purchase agreements regarding Stonewall Coin Laundry (DN 7-5) and Aerete (DN 7-6), respectively, to support his alleged attorney-client relationship with Ms. Whites. Wysong asserts that McClain's Response concedes that Ms. Whites worked jointly on the Aerete and Stonewall transfer documents and that Ms. Whites "discussed corporate business" with Wysong. (DN 13, at p. 1). While the facts regarding Wysong's role and ownership in Aerete are largely disputed, the parties agree that Wysong served as a member of Aerete's board and had some ownership in the company. Ms. Whites clearly assisted the parties in the transaction that resulted in McCain becoming the sole owner of Aerete in 2020. Commonsense dictates that Ms. Whites, serving as Aerete's counsel, would discuss corporate business with a board member and shareholder and that Ms. Whites might assist in ownership transfers. But such

discussions and assistance alone do not shift Ms. Whites' representation of Aerete to dual representation.

Wysong has not demonstrated that he approached Ms. Whites and made clear that he was seeking legal advice in his individual capacity; that the substance of any conversations he had with Ms. Whites extended beyond matters within the company; that Aerete consented to Ms. Whites dually representing the company and Wysong: or that he had a reasonable belief that Ms. Whites had agreed to represent him individually. Thus, he has failed to prove the existence of an attorney-client relationship with Ms. Whites based on his disputed role at Aerete. This failure is sufficient grounds to deny his motion for disqualification. *See, e.g., Metris-Shamoon v. City of Detroit*, No. 18-13683, 2021 WL 973076, at *3 (E.D. Mich. Mar. 16, 2021). It is not necessary to further evaluate the *Dana* factors.

b. Did Ms. Whites Represent Wysong and his Businesses Personally?

Wysong also claims a successive conflict exists because Ms. Whites served as his individual counsel on "real estate issues in South Carolina" in connection with his business, Stonewall Development, LLC. (DN 7-1, at p. 3). As part of this representation, Wysong asserts, Ms. Whites was privy to his confidential personal finance information and other business dealings. (*Id.*). Ms. Whites denies that she has ever had a contract with Wysong or served as his personal counsel and notes that he "always had multiple separate counsel dealing with his private concerns and interests as well as privately advising him on Aerete matters." (DN 9, at p. 1).

Wysong again does not meet his burden of demonstrating an attorney-client relationship existed based on the submitted evidence. Beyond attesting to an alleged relationship in his Declaration and briefly mentioning that Ms. Whites advised him on certain business transactions that "appear to be at issue in [McClain's] claims," Wysong provides no proof of conduct

demonstrating that he had a reasonable belief that Ms. Whites agreed to represent him personally or represent his businesses outside of Aerete. *See J&B Energy, Inc.,* 2014 WL 3973966, at *9. Wysong's failure to meet this threshold factor concludes the Court's analysis.

### ii. Attorney as Witness (Rule 3.7)

Wysong next pursues disqualification of Ms. Whites pursuant to Kentucky Rule of Professional Conduct 3.7 (Lawyer as Witness). This Rule generally prohibits an attorney from acting as an advocate at a trial in which she is likely to be a necessary witness. Wysong claims Ms. Whites is a fact witness to the underlying events at issue in this case and there is a substantial risk that Ms. Whites' advocacy and status as a fact witness would be prejudicially conflated at trial. (DN 7, at pp. 11-12). McClain responds that Ms. Whites will not be a fact witness at trial because she has no independent factual knowledge regarding the issues in the case: whether Wysong improperly siphoned funds from Aerete or defrauded McClain regarding property ownership in South Carolina. (DN 9, at pp. 13-14). McClain emphasizes that all information contained in the Complaint came from her own testimony provided to Ms. Whites or by Wysong's counsel, Glen Hunter Garrett. (*Id.*).

Rule 3.7 is meant to balance a party's right to choice of counsel against the unfair prejudice created when that attorney testifies. Where the party is calling the opposing party's counsel as a witness, "there must be a genuine need for the attorney's testimony, which should be material to the movant's case . . . " *Hall v. MLS Nat. Med. Evaluations, Inc.*, No. 05-185-JBC, 2008 WL 533542, at *2 (E.D. Ky. Feb. 27, 2008). "[T]he showing of prejudice needed to disqualify counsel must be more stringent than when the attorney is testifying on behalf of his own client, because adverse parties may attempt to call opposing lawyers as witnesses simply to disqualify them." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001).

While Ms. Whites' experience as counsel for Aerete and involvement in the ownership transfer between Wysong and McClain could be relevant to Wysong's defenses, it is not apparent that she will be a necessary witness at trial. The parties dispute whether Ms. Whites has factual information that would be pertinent to the issues in this case. Wysong also fails to prove there is a probability that Ms. Whites' testimony, if necessary, would conflict with that of other witnesses. Wysong may ultimately be permitted to call Ms. Whites as a witness at trial, but that does not automatically result in Ms. Whites' disqualification. Wysong's request to disqualify Ms. Whites pursuant to Rule 3.7 is denied.

### B. McClain's Counter-Motion to Disqualify Wysong's Counsel

McClain, in responding to Wysong's Motion, makes a Counter-Motion for disqualification of Wysong's counsel, Michael Leigh ("Mr. Leigh"), based on a conflict of interest with his firm's prior representation of Aerete and McClain during a purchase of equipment that McClain signed a personal guaranty for in 2019. (DN 9, at pp. 12-13). McClain expounds that Mr. Leigh was privy to her private matters during this representation and that she had no other counsel at that time. (*Id.* at p. 13).

Wysong responds that McClain's Counter-Motion is meritless and should be summarily denied because it does not comply with Local Rule 7.1. (DN 13, at p. 6). While Wysong admits that Mr. Leigh's law firm previously represented McClain, he clarifies that Mr. Leigh was not involved in that representation and has no knowledge or information related to that representation. (*Id.*). Wysong provides a screening memo from Mr. Leigh's law firm that indicates they did not believe a conflict existed in representing Wysong but that out of an abundance of caution they would screen Mr. Leigh from all of McClain's files and from discussions of the firm's prior representation of McClain. (*Id.* at pp. 6-7).

12

McClain does not cite any legal authority to support her disqualification argument. Kentucky Rule of Professional Conduct 1.10 governs the imputation of conflicts to other lawyers at a law firm. Paragraph (d) of this Rule excepts from disqualification a firm where a current attorney represented a former client if: "(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no specific part of the fee therefrom; and (2) written notice is given to the former client." Ky. S. Ct. R. 3.130(1.10(d)).

It is undisputed that Mr. Leigh's law firm represented McClain and Aerete through a contractual agreement from sometime in 2019 to October of 2020. But McClain does not establish that the firm's prior representation should be imputed to disqualify Mr. Leigh. The law firm's screening memo makes clear that Mr. Leigh is being screened from the firm's prior representation of McClain, including her file and any discussions, and likewise that another attorney at the firm is being screened from the file and discussions regarding the current litigation. McClain's undeveloped request for disqualification of Mr. Leigh is denied.

### III. Conclusion

It bears repeating that the court's ability to disqualify the capable counsel of one's choosing is a "potent weapon" that at times masquerades for harassment. *Moses v. Sterling Commerce (Am.), Inc.*, 122 F. App'x 177, 183 (6th Cir. 2005) (quoting *Manning v. Waring, Cox, James, Sklar, & Allen*, 849 F.2d 222, 224 (6th Cir. 1988)). Neither Wysong nor McClain has carried the heavy burden of demonstrating that a conflict of interest warranting disqualification exists with counsel of their choice representing them in the instant case.

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion to Disqualify Plaintiff's Counsel (DN 7) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Counter-Motion to Disqualify Defendant's Counsel (DN 9) is **DENIED.**

**IT IS FURTHER ORDERED** that upon entry of this Order, the Court's prior stay of all proceedings and deadlines in the case is **LIFTED.**

Regina S. Edwards, Magistrate Judge
United States District Court

May 18, 2021

Copies:   Counsel of Record